FREMONT STATE BANK *v.* OLD STATE BANK.

1. GARNISHMENT—PROCEEDS OF SALE OF PROPERTY TURNED OVER TO SATISFY A DEBT BEYOND REACH OF ANOTHER CREDITOR.

Where a debtor arranged to have an auction sale of his personal property, and turned over the proceeds thereof to a creditor to satisfy a debt, he had no further interest therein which could be reached by a second creditor by garnishment; and it is immaterial that a chattel mortgage given to secure the first creditor was void as against subsequent creditors, where no rights were claimed thereunder.

---

¹Garnishment, 28 C. J. §§ 138, 143.

2. FRAUDULENT CONVEYANCES—DEBTOR MAY PREFER ONE CREDITOR TO ANOTHER.

It is the settled law of this State, that, laying aside the Federal bankruptcy act, a debtor may prefer one creditor to another.

3. APPEAL AND ERROR—JUDGMENT SUPPORTED BY TESTIMONY AFFIRMED.

Where the judgment in garnishment proceedings is sustained by the findings, which are supported by testimony, it is affirmed, although there was testimony which would have justified a different finding.

Error to Newaygo; Barton (Joseph), J. Submitted June 7, 1927. (Docket No. 5.) Decided July 29, 1927.

Garnishment proceedings in justice's court by the Fremont State Bank against the Old State Bank. There was judgment for defendant, and plaintiff appealed to the circuit court. Judgment for defendant. Plaintiff brings error. Affirmed.

*White & Reber,* for appellant.

*William J. Branstrom,* for appellee.

FELLOWS, J. This case originated in justice's court. The return of the justice is quite elaborate. It contains a statement of testimony given, his conclusions on it, sets up the issue before him, the proceedings had thereon, and in the circuit it was stipulated that his return should stand as the agreed facts in the case. It will, therefore, be treated as a finding of facts. From this return it appears that one Misner was indebted to defendant bank in the sum of $590.80. He had executed a chattel mortgage to secure this indebtedness, but this mortgage did not have annexed thereto the affidavit required by section 11988, 3 Comp.

²Fraudulent Conveyances, 27 C. J. § 363; ³Appeal and Error, 4 C. J. § 2853.

Laws 1915. No proceedings were had to enforce this mortgage. Misner, however, arranged to have an auction sale of his personal property and to turn over the proceeds thereof to defendant bank to satisfy, as far as possible, his indebtedness to it. To effectuate this purpose it was agreed between Misner and the cashier of the bank that one Tinney, who had acted in such capacity for the bank before, should be clerk of the auction, receive the proceeds, and turn them over to the bank. The auction was held; some sales were for cash and some notes were given. We quote from the return of the justice:

"At the same time and on the same date, to wit, February 12th, Misner indorsed the notes received by Tinney at the sale and again instructed Tinney to turn over the notes and the moneys in his hands to the Old State Bank.

"Immediately after the auction sale the said Tinney notified the Old State Bank that he had notes and moneys in his hands, the proceeds of the Misner auction sale, and that he was ordered by said Misner to turn the same over to the said Old State Bank, and that he was holding said notes and moneys for the Old State Bank."

Misner was also indebted to the plaintiff bank on an indebtedness contracted after that to defendant bank. It sued Misner in justice's court, and, on February 13th, garnishee summons was served on Tinney. Tinney's disclosure sets up the facts above stated, in substance; defendant bank appeared and the following issue was framed:

"Did the said Tinney, on the 13th day of February, 1925, have any moneys and notes in his possession and under his control which belonged to the said Clarence Misner or were the said moneys and notes at that time the property and effects of the Old State Bank of Fremont?"

Upon this issue the justice found:

"After hearing the parties in relation to said issue, it is my opinion that Clarence Misner had no further interest in these funds after the 12th day of February, 1925, that being the date on which he settled up with Erwin Tinney and indorsed these notes and other property over to the Old State Bank.

"It is also my opinion that Tinney was not obligated to Misner in any way; that Tinney was, however, the custodian of these funds for the Old State Bank of Fremont, Michigan."

It is insisted by plaintiff's counsel that the mortgage to defendant bank was void (*People, for use of Esper, v. Burns,* 161 Mich. 169 [137 Am. St. Rep. 466]); that defendant had no rights under it as against subsequent creditors, of which it is one; that it is entitled to maintain the proceeding; and that the case is controlled by *Baker* v. *Parkhurst,* 119 Mich. 542. Defendant's counsel from the first has conceded the invalidity of the mortgage; he claims nothing for it. What he does claim is that the mortgage is in no way involved in this suit; that defendant asserts no claim under it, has taken no step to enforce any rights under it, but that by the arrangement between the cashier and Misner, and by that arrangement alone, the proceeds of the auction sale became the property of the defendant bank before the garnishee summons was served on Tinney; that the case is controlled by *Crusoe Bros. Co.* v. *Kudner,* 136 Mich. 583; and that Misner had the right to prefer one creditor to another.

*Baker* v. *Parkhurst, supra,* was a proceeding instituted in the circuit court under the applicable statute. The mortgages had not been recorded, were, therefore, void as to subsequent creditors, and "the garnishee defendants could assert no rights under" them; it was found they had asserted such rights and that the arrangement made was based on them. In *Crusoe Bros. Co.* v. *Kudner, supra,* the mortgage was likewise void as to subsequent creditors but the mort-

gagee did not take possession of any property under it or seek to foreclose it. It was said by Chief Justice MOORE, speaking for the court:

"If there had been in fact no chattel mortgage, and the dealings between Mr. Smith and Mr. Kudner had in other respects been the same as now, it would not be claimed Mr. Kudner must account as garnishee defendant for what he received and actually applied on Mr. Smith's indebtedness to him. Does the fact that he had a chattel mortgage which he did not file, and under which he did not act, place him in a different position? We think the answer must be in the negative."

We are persuaded that the later case controls. In the recent case of *Nessen Lumber Co.* v. *Bennett Lumber Co.*, 223 Mich. 349, in considering the question of when garnishment proceedings are maintainable, it was tersely stated by Mr. Justice SHARPE:

"The usual test is whether the defendant might have maintained an action to recover the property from the garnishee."

Patently, Misner, after making the arrangement found to have been made, could not have maintained an action against the garnishee defendant.

It is the settled law of this State that, laying aside the Federal bankruptcy act, a debtor may prefer one creditor to another. *Harnau* v. *Haight*, 209 Mich. 604, and authorities there cited.

While it is possibly true that there was some testimony which would have justified a different finding, there was testimony to support the findings, and the findings sustain the judgment, which will be affirmed.

SHARPE, C. J., and BIRD, SNOW, STEERE, WIEST, CLARK, and McDONALD, JJ., concurred.